United States District Court
Southern District of Texas
**ENTERED**
July 08, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:12-757-2 |
| | § | |
| LUIS PEREZ-BAROCELA, | § | |
|    Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Luis Perez-Barocela's Successive Motion for Compassionate Release Under 18 U.S.C. section 3582(c)(1)(A). D.E. 362.

**I. BACKGROUND**

In 2012, Defendant and two others were charged with conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana. His codefendants pled guilty, while Defendant proceeded to trial. Coconspirators testified that they were commercial truck drivers and that Defendant had recruited them to transport loads of marijuana through the Falfurrias Border Patrol checkpoint between October 2011 and February 2012 in return for payments ranging from $30,000 to $50,000. According to the testimony, Defendant and other codefendant obtained the marijuana, sometimes led the loading and unloading process, and accompanied the trucks through the border in separate vehicles. They provided agents with Defendant's phone number and identified him in photo arrays. The jury found Defendant guilty, and he was sentenced to 292 months' imprisonment, which was reduced to 235 months in 2015 under Amendment 782 to the Sentencing Guidelines. He has served approximately 117 months (50%) of his sentence and has a projected release date, after good time credit, of March 15, 2031.

Defendant previously moved Court to reduce his sentence to time served and/or order his release to home confinement because his underlying medical conditions increased his risk of complications should he contract COVID-19 in prison. D.E. 257. The Court denied the motion by written Memorandum Opinion & Order entered November 16, 2020, explaining: (1) Defendant offered no evidence that he suffered from any underlying medical condition that would make him particularly vulnerable to COVID-19; (2) the Court was without sufficient information regarding his conduct in prison to determine whether he poses a danger to society if released; and (3) because Defendant failed to demonstrate that he had complied with the exhaustion requirements under 18 U.S.C. § 3582, the Court was without jurisdiction to grant his motion. D.E. 258.

In his current motion, Defendant repeats his claim that his underlying medical conditions make him particularly vulnerable to COVID-19. He also argues that proposed "marijuana normalization bills" indicate that Congress and society view his sentence as "dramatically longer than necessary or fair." Finally, Defendant complains that he received a significantly longer sentence than his codefendant and his sentence is "disproportionate on a national level." He filed an administrative request for compassionate release with the Warden of McDowell FCI on March 1, 2022, but he does not indicate whether he received a response.

## II. LEGAL STANDARD

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under limited circumstances:

> **(c) Modification of an Imposed Term of Imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>    (1) in any case—
>       (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

>earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—*
>>*(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

The Fifth Circuit previously considered U.S.S.G. § 1B1.13 an applicable policy statement when a prisoner, rather than the Bureau of Prisons (BOP), moved for relief under § 3582(c)(1)(A)(i). *United States v. Coats*, 853 F. App'x 941, 942 (5th Cir. 2021). In *Shkambi*, however, the Fifth Circuit "joined [its] sister circuits in holding that § 1B1.13 does not actually apply to § 3582(c)(1)(A)(i) motions brought by the inmate." *Id.* (citing *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021) ("Neither the [U.S. Sentencing Commission's compassionate-release] policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582.")). Although "not dispositive," the commentary to U.S.S.G. § 1B1.13 nonetheless "informs [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (citing *United States v. Rivas*, 833 Fed. App'x 556, 556 (5th Cir. 2020)).[1]

---

1. **(A) Medical Condition of the Defendant. –**
    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
    (ii) The defendant is—
        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    **(B) Age of the Defendant. –**
    The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or

Even if "extraordinary and compelling reasons" for early release exist, the Sentencing Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

"If the district court makes those two findings"—both that extraordinary and compelling reasons warrant a sentence reduction *and* that a reduction is consistent with the applicable Guidelines' policy statements—"then the court 'may' reduce the defendant's sentence 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Ward v. United States*, 11 F.4th 354, 359–60 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The applicable § 3553(a) factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the

---

mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;

**(C) Family Circumstances.** –
  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.** –
  As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the need to avoid unwarranted sentencing disparities among similarly-situated defendants; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7). "The district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction." *Ward*, 11 F.4th at 360.

"[T]he burden falls on the defendant to convince the district judge to exercise discretion to grant the motion for compassionate release . . . ." *Id.* at 361 (internal quotations and alterations omitted); *see also United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) ("In general, the defendant has the burden to show circumstances meeting the test for compassionate release.").

> With respect to motions for compassionate release based on COVID-19:
>
> A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)).

> To be sure, courts around the country, in some exceptional cases, have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID. . . . But that is certainly not a unanimous approach to every high-risk inmate with preexisting conditions seeking compassionate release.

> The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns. . . . Fear of COVID doesn't automatically entitle a prisoner to release.

*Thompson*, 984 F.3d at 434–35 (collecting cases) (footnotes and citations omitted).

## III. ANALYSIS

### A. Extraordinary and Compelling Reasons

#### 1. COVID-19 Concerns

Defendant re-urges his motion for compassionate release because his underlying medical conditions (chronic back pain, thyroiditis, inflamed umbilical hernia, renal calculus, and history as a former smoker) make him particularly vulnerable to severe illness or death should he contract COVID-19 in prison.[2] According to the Centers for Disease Control and Prevention's (CDC) most recent COVID-19 risk factor list, "Being a current or former cigarette smoker can make you more likely to get very sick from COVID-19." *See People with Certain Medical Conditions*, CDC (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The Government has previously acknowledged that an inmate who has not been offered a vaccine, who presents a condition on the CDC's list, presents an extraordinary and compelling reason allowing consideration of compassionate release. Defendant, however, received his first dose of the COVID-19 vaccine on January 21, 2021; a second dose on February 11, 2021; and a booster on February 7, 2022. While the vaccine is not 100% effective at preventing infection, it substantially reduces the risk of serious illness or death from COVID-19, even in patients with high-risk medical conditions.

---

2. Defendant has been unable to obtain copies of his recent medical records in support of this claim, despite submitting numerous requests to the prison's medical records department.

"Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit." *United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021). Courts in this district have repeatedly denied compassionate release to inmates who have been vaccinated against COVID-19, "finding that 'vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection.'" *United States v. Rodriguez*, 2021 WL 2635381, at *4 (S.D. Tex. June 25, 2021) (quoting *United States v. Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to inmate with underlying health conditions who had received first vaccine dose), and citing *United States v. Schad*, 2021 WL 1845548, at *3 (S.D. Tex. May 5, 2021) (denying compassionate release to 32-year-old inmate with aortic valve transplant and history of cerebrovascular disease who received both doses of the vaccine); *United States v. Fisch*, 2021 WL 1537274, at *1 (S.D. Tex. Apr. 19, 2021) (denying compassionate release to high-risk inmate who was offered and refused the vaccine); *United States v. Wedding*, 2:19-CR-1693 (S.D. Tex. Apr. 8, 2021) (denying compassionate release to inmate who developed asymptomatic COVID-19 infection three weeks after receiving second vaccine)). Because Defendant is "at little-to-no risk of severe COVID-19 [] after receiving his second [vaccine] dose, there are no 'extraordinary and compelling reasons' justifying a compassionate release in this case." *See United States v. Groom*, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021).[3]

---

3. Decisions across the country overwhelmingly agree that the risk posed by COVID-19 to a vaccinated inmate is not an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Burks*, 2021 WL 1394857, at *3-4 (W.D.N.C. Apr. 13, 2021); *United States v. Gomez-Vega*, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021); *United States v. Burks*, 2021 WL 1291935, at *2 (D. Minn. Apr. 7, 2021); *United States v. Jones*, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021); *United States v. Miller*, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021); 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021); *United States v. Decano*, 2021 WL 1095979, at *6 (D. Haw. Mar. 22, 2021); *United States v. Williams*, 2021 WL 1087692, at *3 (D. Minn. Mar. 22, 2021); *United States v. Gabbard*, 2021 WL 1037724, at *3 (E.D. Mich. Mar. 18, 2021); *United States v. Kosic*, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021); *United States v. Stewart*, 2021 WL 1011041, at *1 (D. Haw. Mar. 16, 2021); *United States v. Godoy-Machuca*, 2021 WL 961780, at *2 (D. Ariz. Mar. 15, 2021); *United States v. Williams*, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021); *United States v. Roper*, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021); *United States v. Cardoza*, 2021 WL 932017, at *1 (D. Or. Mar. 11, 2021); *United States v. Poupart*, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021);

7

**2. Pending Legislation**

Defendant argues that "society's liberalization of marijuana laws and attitudes" is an extraordinary and compelling reason for compassionate release. For example, the Marijuana Opportunity Reinvestment and Expungement Act ("MORE," H.R. 3617), which decriminalizes marijuana, passed the House of Representatives and was introduced into the Senate (S. 10140). Citing *United States v. McCoy*, 981 F.3d 217 (4th Cir. 2020), Defendant maintains that "Courts legitimately consider, under the extraordinary and compelling reasons for a sentence reduction, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." D.E. 362, pp. 5–6 .

The *McCoy* Court recognized that "multiple district courts have concluded that the severity of a [18 U.S.C.] § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." *McCoy*, 981 F.3d at 285. *See also United States v. Cooper*, 996 F.3d 283, 289 (5th Cir. 2021) (remanding case to the S.D. Tex. "to consider, in the first instance, whether the nonretroactive sentencing changes to [the defendant's] § 924(c) convictions, either alone or in conjunction with any other applicable considerations, constitute extraordinary and compelling reasons for a reduction in sentence.").

Defendant was not sentenced under § 924(c).[4] He also has received the benefit of Amendment 782, which reduced the base offense level by two for all drugs. Despite changes in

---

*United States v. Johnson*, 2021 WL 863754, at *2 (W.D. Ky. Mar. 8, 2021); *United States v. Shepard*, 2021 WL 848720, at *5 (D.D.C. Mar. 4, 2021); *United States v. Lipscomb*, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021); *United States v. Cortez*, 2021 WL 689923 (D. Ariz. Feb. 23, 2021); *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021); *United States v. Ballenger*, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021).

4. In 2018, Congress eliminated stacking of consecutive enhanced sentences for offenders without a prior conviction under § 924(c) who are charged and convicted of multiple § 924(c) counts in the same criminal action.

society's attitudes towards marijuana, Congress has not legalized marijuana at this time, nor has it further reduced the offense level for Defendant's crime.

### 3. Sentencing Disparity

Defendant next complains that he received a significantly longer sentence than one codefendant, who received a sentence of 24 months' imprisonment. Citing roughly a dozen cases in which defendants received lower sentences for possession with intent to distribute more than 1,000 kilograms of marijuana, he claims his sentence is "also disproportionate on a national level." D.E. 361, p. 6.

Defense counsel similarly argued at sentencing that extreme disparities between the sentences received by cooperating co-defendants and witnesses and should be considered. The Government responded that these cooperating witnesses were merely mules, had no criminal history, and had been misled by Defendant as to the quantity of drugs they would be carrying. As the Court further recognized in its Memorandum Opinion & Order denying Defendant's motion under 28 U.S.C. § 2255, the codefendant/driver who cooperated with the Government was only held accountable for 506.01 kilograms of marijuana, was a minor participant, was safety valve eligible, received credit for acceptance of responsibility, and testified against Defendant at trial. Defendant, on the other hand, was held accountable for 3921.9 kilograms of marijuana, did not qualify for safety valve or acceptance, and received enhancements for threatening a witness and being a manager/supervisor.

The Guidelines encompassed all the conduct in which Defendant engaged, and he received a sentence at the lowest end of his guideline range. Sentencing disparity between Defendant and other defendants who are not similarly-situated does not constitute an extraordinary and compelling reason warranting a sentence reduction.

### 4. "Overlong" Sentence

Defendant further argues that he should only have been held accountable for 1,000 kilograms of marijuana at sentencing, because 765 kilograms were "double counted" and he was not involved with Jose Benitez at the time of Benitez's arrest. Defense counsel objected to the drug quantity at sentencing, but his objection was overruled. Defendant did not raise this issue on appeal. The Court finds that Defendant's conclusory allegations regarding drug quantity are insufficient to constitute extraordinary and compelling reasons for compassionate release.

### 5. Rehabilitative Efforts

Defendant has offered evidence that he has completed numerous educational programs while in custody, including a substance abuse program. He states that he has maintained a job and regularly attends faith services when available. He also emphasizes that has had no disciplinary reports against him in the last four years; however, the Court notes that, between 2015 and 2018, he was disciplined for fighting with another inmate, possessing medication without a prescription, possession an unauthorized item, possessing gambling paraphernalia, and bribing a staff member.

Defendant's rehabilitative efforts are commendable; however, while the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone. *See* U.S.S.G. § 1B1.10, app. n.1(B)(iii).

### B. Sentencing Guidelines Policy Statements and 18 U.S.C. § 3553(a) Factors

As stated *supra*, Defendant was the manager/supervisor of a drug trafficking organization that transported thousands of kilograms of marijuana through a Border Patrol checkpoint. His sentence was enhanced for obstruction of justice/intimidating a witness after he made threatening statements to his codefendant while they were incarcerated together before trial. His criminal

history included a prior conviction for conspiracy, with the purpose of promoting and facilitating the commission of the crimes of official misconduct, forgery, falsifying records, and tampering with public records or information. He has not yet served his 4-year sentence in that case, which was stayed pending his appeal. Defendant also faces pending charges in Sunrise, Florida related to the attempted purchase of approximately 27 kilograms of cocaine.

Based on the nature and circumstances of the offense of conviction, the weight of the evidence, and the danger to the community that would be posed by Defendant's early release, the Court finds that a sentence reduction would not be consistent with the applicable Sentencing Guidelines' policy statements. *See* 18 U.S.C. § 3142(g); U.S.S.G. § 1B1.13(2). The Court further finds that releasing Defendant when he has served only half of his sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense, nor would it deter criminal conduct or protect the public from further crimes. *See* 18 U.S.C. § 3553(a)(2).

## IV. CONCLUSION

For the reasons set forth above, Defendant's Successive Motion for Compassionate Release Under 18 U.S.C. section 3582(c)(1)(A) (D.E. 362) is **DENIED**.

It is so **ORDERED** this 6th day of July, 2022.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE